UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JAMES CARROLL | CIVIL ACTION |
|---|---|
| VERSUS | NO. 06-9031 |
| MARLIN GUSMAN, INDIVIDUALLY | SECTION "N"(4) |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 8)** filed by the Defendant, Sheriff Marlin Gusman ("Gusman"), seeking dismissal of the claims against him. The Plaintiff, James Carroll ("Carroll"), opposes the motion. (Rec. Doc. No. 12.) The motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

### I. Factual Summary

Carroll filed this complaint through counsel pursuant to 42 U.S.C. § 1983 and La. Civ. Code art. 2315 against Orleans Parish Criminal Sheriff Marlin Gusman seeking relief a result of the conditions of his confinement in Orleans Parish Prison ("OPP") at the time Hurricane Katrina

struck the New Orleans area on August 29, 2005.

Carroll alleges that the prison guards abandoned the prison and left him to die in his cell. He claims that he remained in his cell for four days and nights without food, water, light, proper toilet or shower facilities, change of clothes, and medicine.

Carroll further states that he was evacuated by boat to the Broad Street overpass where he sat on concrete for two days and nights without food, water, light, proper toilet or shower facilities, change of clothes, and medicine. He claims that the guards had bottled water and food.

Carroll alleges that the deprivation of food, water, bathroom facilities, and proper clothing amounted to deliberate indifference to basic necessities of life in violation of the Eighth Amendment. He also alleges that Sheriff Gusman personally announced before the storm that the inmates would not be evacuated and would be left in their cells. Carroll claims that he was a "victim of this policy."

As relief, Carroll seeks damages, including punitive damages, interest, costs, and "disbursements," and attorney's fees.

## II.     Defendant's Pending Motion

Sheriff Gusman filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 8) seeking dismissal of Carroll's claims. Sheriff Gusman argues that Carroll has failed to allege any personal involvement or intentional indifference by him with regard to the evacuation process or the conditions to which he was exposed during and after Hurricane Katrina to invoke liability under § 1983. Sheriff Gusman also alleges that Carroll's Complaint was untimely filed more than one year after the events forming the basis of his claims. The motion does not address Carroll's state law claims.

In his Opposition Memorandum (Rec. Doc. No. 12), Carroll alleges that his Complaint was timely filed when certain extensions granted by the Governor of Louisiana are taken into consideration. He also alleges that Sheriff Gusman is personally liable because he disregarded the mandatory evacuation order by Mayor Ray Nagin. Carroll alleges that this was a personal decision and intentional act which amounted to deliberate indifference to the safety of the inmates in OPP.

Sheriff Gusman filed a reply to Carroll's opposition (Rec. Doc. No. 15) in which he argued that his office was exempted from Mayor Nagin's evacuation order and that he was under no obligation to evacuate OPP. Sheriff Gusman submitted therewith a copy of the Mayor's order. He also alleges that, without personal involvement, § 1983 does not recognize supervisory liability against him.

## II.     Standards of Review Pursuant to Fed. R. Civ. P. 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard for addressing a Rule 12(c) motion is the same as that used for deciding motions to dismiss pursuant to Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1368 at 591).

Thus, a motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co.*, 313 F.3d at 313 (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990)).

3

The query for the Court is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir.2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir.2000)).

The Court can dismiss a claim under Fed. R. Civ. P. 12(c) when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.1990)). In considering the motion, the pleadings should be construed liberally and judgment on the pleadings granted only if there are no disputed issues of fact and only questions of law remain. *Hughes*, 278 F.3d at 420 (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998)). "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir.1996)).

The Court will not, however, accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Trust Co.*, 313 F.3d at 312-13 (citing *Collins*, 224 F.3d at 498). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324 (citations omitted).

## III. Analysis

### A. Plaintiff's Complaint is Not Prescribed

Carroll filed the instant petition through counsel on October 25, 2006, seeking damages under federal and state law arising from the conditions of his confinement beginning on August

4

25, 2005, and spanning the next six days. Sheriff Gusman contends that the Complaint was not timely filed.

### 1. The Applicable Limitations Period

Because there is no federal statute of limitations for § 1983 claims, the district court looks to the forum state's statute of limitations for personal injury claims. *Bd. of Regents of Univ. of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[1] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Id*., at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In this case, Carroll's cause of action, under federal and state law, would have accrued at the earliest on August 29, 2005, when he was left in OPP to endure Hurricane Katrina and its aftermath. Applying the prescriptive period, he had one year from that date, or until August 29, 2006, to timely file his § 1983 petition.

### 2. Suspension of Deadlines

---

[1] Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

5

While Sheriff Gusman correctly identifies the foregoing as the prescriptive period applicable to Carroll's action, he fails to recognize the state's regulations on the tolling or interruption of prescription. *See Holden v. Knight*, No. Civ. A. 03-2347, 2003 WL 22902625 (E.D. La. Dec. 8, 2003). The United States Supreme Court requires that the federal courts look to the state's statutes on suspension or tolling of a prescription statute applicable to a § 1983 claim. *Board of Regents*, 446 U.S. at 485. The same would of course apply to Carroll's state law claims. "In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1975). The Supreme Court has resolved that "[a]ny period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action." *Bd. of Regents*, 446 U.S. at 485 (quoting *Johnson*, 421 U.S. at 463-64). This Court must therefore consider any state law which would suspend the running of prescription against Carroll's federal and state law claims.

Under both Louisiana law and federal law, a suspension of prescription constitutes a temporary halt to its running after which it will continue to run. *Mankowski v. United States*, 148 F.2d 143, 145 (5th Cir. 1945) ("Suspend means to interrupt, ... to discontinue temporarily but with expectation or purpose of resumption."); *Failla v. Dynasty Distribs., Inc.*, No. Civ.A. 06-16, 2006 WL 860969, at *4 n.5 (E.D. La. Mar. 24, 2006); *LeBreton v. Rabito*, 714 So.2d 1226 (La. 1998). After Hurricanes Katrina and Rita impacted the State of Louisiana, Governor Kathleen Babineaux Blanco issued three Executive Orders suspending the limitations period

6

applicable to this case.[2] These orders were later ratified by the Louisiana Legislature.[3] The effect of these Executive Orders, read together, was to suspend prescriptive periods between August 29, 2005 and November 25, 2005. *See Mitchell v. Kaiser Aluminum & Chemical Corp.*, 942 So.2d 1093 (La. App. 5th Cir. 2006).

Following this, on November 23, 2005, the Louisiana Legislature enacted La. Rev. Stat. Ann. § 9:5824, which also memorialized the effect of the executive orders on the legal community arising from Hurricanes Katrina and Rita. The statute provides for a suspension of legal delays, including liberative prescription, from November 23, 2005, through June 1, 2006, and provided that it may be used as a defense to an exception of prescription.[4] *See Cipriano v.*

---

[2] The three Executive Orders were Nos. KBB-2005-32, KBB 2005-48, and KBB 2005-67. *See* 2005 Executive Orders, http://doa.louisiana.gov/osr/other/2005KBBexo.htm. In No. KBB-2005-32, the Governor, in recognizing the state of emergency caused by Hurricanes Katrina and Rita, declared the following: "All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following: A. Louisiana Civil Code; B. Louisiana Code of Civil Procedure; C. La. R.S. Title 9, Civil Code Ancillaries; D. La. R.S. Title 13, Courts and Judicial Procedure; E. La. R.S. Title 23, Chapter 10, Worker's Compensation; F. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and G. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice . . . SECTION 2: This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time." Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous order to suspend these deadlines until "at least October 25, 2005." Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005."

[3] La. Rev. Stat. Ann. § 9:5821 provides in pertinent part that "[t]he action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed subject to the provisions of R.S. 9:5822 through 5825."

[4] La. Rev. Stat. Ann. § 9:5824 provides in pertinent part as follows:
B. (1) Notwithstanding the provisions of R.S. 9:5822 or 5823, a party who is domiciled within the parishes of Cameron, Orleans, Plaquemines, St. Bernard, Jefferson, or Vermilion, or whose cause of action arose within such parishes or whose attorney is domiciled within or has a law office within such parishes, may seek in any court of competent jurisdiction in this state a limited suspension and/or extension of prescription or peremption periods or other legal deadlines, beyond the termination dates provided in R.S. 9:5822 and 5823, by contradictory motion or declaratory judgment. The party seeking an additional suspension and/or extension, in accordance with the provisions of this Section, shall bear the burden of proving by a preponderance of the evidence that the motion was filed at the earliest time practicable and but for the catastrophic effects of Hurricane Katrina or Rita, the legal deadline would have been timely met. If the court grants the motion, the prescription or peremptive period or other legal deadline shall be suspended or extended for a period not to exceed thirty days from the date of the granting of the motion. This limited suspension or extension shall terminate on June 1, 2006, and any right, claim, or action which would have expired during the time period of January 4, 2006, through May 31, 2006, shall lapse on June 1, 2006.

7

*Pulitzer*, 959 So.2d 558 (La. App. 4th Cir. 2007). The legislature further provided that the extension was granted and allowed subject to review of the presiding judge based on the circumstances of the case.

As discussed above, this Court is compelled by Supreme Court precedent to consider and apply these suspensions of the prescriptive period applicable to Carroll's complaint. Therefore, applying the suspensions of deadlines recognized by the State of Louisiana by Executive Order and statute, Carroll's prescriptive period, or the one-year period by which his § 1983 and tort suit was to be filed, was suspended from August 29, 2005, through June 1, 2006.

In addition, another recognized suspension of the filing deadlines was in place in this federal court. On September 1, 2005, Chief Judge Helen G. Berrigan of the United States District Court for the Eastern District of Louisiana, signed an order suspending ". . . all deadlines and delays, including liberative prescription and peremptive periods in cases pending or to be filed in this Court . . ."[5] This suspension was terminated on November 25, 2005, except for good cause shown.[6] Thus, under the standing order of this Court, Carroll was also entitled to suspension of the one-year deadline from September 1, 2005 through November 25, 2005, by order of this Court.

### 3. Carroll's Complaint was Timely Filed

The record in this case reflects that Carroll's complaint was filed by counsel on October 25, 2006. As noted above, Carroll's claims accrued at the earliest on August 29, 2005. Under a

---

(2) The failure to file the motion authorized in Paragraph (1) of this Subsection shall not preclude a party from using the basis of the motion as a defense to an exception of prescription.

[5]*See* E.D. La. Order, signed September 1, 2005, attached hereto.

[6]*See* E.D. La. Order, signed November 3, 2005, attached hereto.

plain reading of the appropriate prescription statute, Carroll would have had one-year from that date, or until August 29, 2006, to file his suit in accordance with La. Civ. Code art. 3492 as applicable to § 1983 *et seq*. As noted, however, the timeliness of Carroll's complaint revolves around the application of the foregoing periods of suspension.

In doing so, Carroll's one-year filing period was suspended from August 29, 2005 through June 1, 2006, under Louisiana law. Thus, no time passed towards the filing deadline prior to the end of the suspension period since the triggering event was on August 29, 2005. Carroll therefore effectively had one year from the termination of the suspension, or until June 1, 2007, to timely file his § 1983 and state tort action.[7] Carroll's complaint, filed October 25, 2006, was timely filed.

Even considering only the suspension of deadlines imposed by Chief Judge Berrigan to actions specifically brought in this Court, the conclusion would not change. As stated above, Carroll's claims accrued on August 29, 2005. The one-year filing period would have run from August 30, 2005 for two days, until September 1, 2005, when Chief Judge Berrigan ordered the suspension of deadlines. The suspension of deadlines continued through November 25, 2005. Carroll's filing period would have begun to run again on November 26, 2005. Carroll had an additional 363 days, or until November 23, 2006, to file his suit. His complaint was filed by counsel on October 25, 2006. The petition therefore would have been filed within the one-year period as effected by this suspension period.

Sheriff Gusman's prescription argument in the Rule 12(c) motion is without merit and must be rejected as a basis for dismissal. The Court must consider Gusman's remaining

---

[7]Using only the Executive Orders for the suspensive period, the one year filing period would have been from November 26, 2005 to November 25, 2006. Carroll's complaint was still filed within that time period.

argument that Carroll has not stated a claim which would entitle him to relief.

### B. Failure to State a Basis for Liability under § 1983

Sheriff Gusman also alleges that Carroll's claims should be dismissed because they are not sufficient to establish liability under § 1983. The Court notes again that Gusman did not address the state court claims in this motion.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. The plaintiff must also establish that the prison official acted with deliberate indifference to the inmate's health and safety. A prison official acts with deliberate indifference in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

In this case, Carroll does not allege that Sheriff Gusman personally caused or was

involved in the unfortunate conditions of his confinement resulting from Hurricane Katrina. Instead, he alleges that Sheriff Gusman made a decision and announced that he was not going to evacuate the prisoners in his custody in spite of Mayor Nagin's mandatory evacuation order. He also argues that the Sheriff should have known from the Mayor's evacuation order that Hurricane Katrina was a danger to the inmates' safety.

A supervisor, like Sheriff Gusman, may be liable under § 1983 "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). An official policy includes a policy statement or decision that is adopted and promulgated by the official with policy-making authority. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992). Even an isolated decision made in the context of a particular situation can be a policy, if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Gusman was the authority on whether the inmates would be evacuated before the storm. Carroll, however, has not shown that Sheriff Gusman's decision not to evacuate was constitutionally deficient or that it was made with the intent to violate or disregard his constitutional rights, as would be required under § 1983.

Carroll suggests that the Sheriff should have known that the hurricane posed a danger because of the evacuation order. However, as noted by Sheriff Gusman and not challenged by the plaintiff, Mayor Nagin exempted Sheriff Gusman's facilities from his evacuation order. There is nothing to support Carroll's conclusory allegation that Gusman's decision was an

11

intentional disregard for the inmate's safety. "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Thus, in this case, Carroll has made no showing of a deliberate disregard, nor has he asserted sufficient facts to support the allegation of intentional indifference arising from the Sheriff's decision not to evacuate the jail before the storm.

To the extent Carroll suggests that the Sheriff's decision was erroneous, negligent, or even grossly negligent, the claims still are not sufficient under § 1983. Negligence does not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986). Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

Furthermore, and most importantly, Carroll has failed to allege any injury resulting from his experience in the prison or the conditions during the evacuation process. Under Title 42

U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but it need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury).

In this case, Carroll has not stated any physical effects or injuries resulting from his experience in the prison during, or on the overpass after, Hurricane Katrina. To the extent he basis his damages on emotional distress or other upset as a result of his experience, these are not compensable under § 1997e(e).

Carroll has not stated a claim for which he is entitled to relief. Sheriff Gusman's motion should be granted.

### C. Remaining State Law Claims

Carroll invoked this Court's supplemental jurisdiction under 28 U.S.C. § 1367 over his state tort claims brought pursuant to La. Civ. Code art. 2315. The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law

13

claims").

The Court is recommending that Sheriff Gusman's motion be granted and that Carroll's federal claims under § 1983 be dismissed in their entirety. Therefore, Carroll's state law claims should be *sua sponte* dismissed without prejudice, as the Court declines to exercise its supplemental jurisdiction.

## IV. Recommendation

**IT IS THEREFORE RECOMMENDED** that the **Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 8)** filed by the defendant, Sheriff Marlin Gusman, be **GRANTED** and the plaintiff James Carroll's § 1983 claims against Sheriff Gusman be **DISMISSED WITH PREJUDICE** for failure to state a claim which would entitle him to relief pursuant to Fed. R. Civ. P. 12(c).

**IT IS FURTHER RECOMMENDED** that Carroll's state law claims brought pursuant to La. Civ. Code art. 2315 be **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise its supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

14

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

                    New Orleans, Louisiana, this 10th day of August 2009

                                **KAREN WELLS ROBY**
                          **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORDER

As the United States Court House in New Orleans has reopened on November 1, numerous attorneys' offices have reopened in New Orleans or are otherwise operating in alternate locations, and with improving services and communication in the region,

IT IS HEREBY ORDERED that the suspension of deadlines and delays, including liberative prescriptive and peremptive periods in all civil cases pending or to be filed in this Court, **is terminated effective November 25, 2005**, except for good cause shown as determined by the presiding judge.

New Orleans, Louisiana, this **3rd** day of November, 2005.

HELEN G. BERRIGAN, CHIEF JUDGE
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORDER

Due to Hurricane Katrina and its aftermath, and the direct consequences of evacuation, the disruption of services and communication in the region, and the Courthouse in New Orleans, as well as numerous attorneys' offices, being temporarily inaccessible,

IT IS HEREBY ORDERED that all deadlines and delays, including liberative prescriptive and peremptive periods in cases pending or to be filed in this Court, are hereby suspended until ordered otherwise.

New Orleans, Louisiana, this 1st day of September, 2005.

HELEN G. BERRIGAN, CHIEF JUDGE
U.S. DISTRICT COURT